## JEREMIAH KIMBALL, *plff. in error, vs.* EBENEZER LITTLEFIELD.

Under the *statute* of 1836, c. 209, in addition to the militia act of 1834, selectmen of towns have no power to take from one company of militia, territory known by them to belong to it, and annex it to another.

By that statute it was made the duty of selectmen, in defining the limits of companies, to conform as nearly as might be, to such lines as had usually been considered the limits of the company.

The power to make new arrangements of companies, or alter their limits, is given by law to the Governor and Council.

SEVEN causes of error were assigned by the counsel for the plaintiff in error, but as the judgment was reversed without considering several of the errors assigned, the facts and arguments in relation to them, will be omitted. Two of them were the following.

2. Because the acts of the selectmen of *South Berwick,* in taking territory known by them to be included within the limits of the company commanded by Captain *Hanscomb*, and annexing the same to the company of Captain *Wentworth*, not conforming as nearly as might be to such lines as had usually been considered the limits of the company, were illegal and void.

3. Because the selectmen of *South Berwick* had no power by law to ascertain, define, or alter the limits of any company of militia including portions of territory known by them to belong to different towns.

The doings of the selectmen of *South Berwick*, in annexing part of *Hanscomb's* company to *Wentworth's*, were under date of

*April* 30, 1836.   On the 25th of *March*, 1836, the selectmen of *York* defined the limits of *Hanscomb's* company according to its well known original limits, as prescribed many years before by the Governor and Council.   The facts in the case sufficiently appear in the opinion of the Court.

The case was argued in writing, by *J. Shepley* and *Hobbs*, for the plaintiff *in error*, and by *Burleigh* and *J. Hubbard*, for the *original* plaintiff.

The counsel for the plaintiff in error, in their argument, endeavored to maintain the following propositions.

1. Under the *Stat.* of 1836, *ch.* 209, in addition to the militia act of 1834, selectmen of towns have no power to take from one company of militia, territory known by them to belong to it, and annex it to another.   They cited *Gould* v. *Hutchins*, 1 *Fairf.* 155.

2. The selectmen had no power or authority by law to ascertain, define, or in any way interfere with a company of militia, including portions of territory known by them to belong to different towns ; no such power being given them by statute, but remaining with the Governor and Council.

3. That the selectmen violated the clear provisions of the statute, in not conforming as nearly as might be to such lines, as have usually been considered the limits of the company.

4. The selectmen have no power to abolish, or destroy, a company of militia, which they may do effectually, if these proceedings are to be supported.

5. That the proceedings of the selectmen were not by the statute, made conclusive evidence of the limits of companies, except where the proceedings are legal.   If the selectmen exceeded their authority, their acts are merely void.   *Davoll* v. *Davoll*, 13 *Mass. R.* 264.

*Burleigh* & *J. Hubbard*, for the defendant in error, contended :

That the statute gave to the selectmen of towns the power — not to abolish old companies, and establish new ones, — but of changing the limits of existing companies, in all cases in their opinion requiring it.   They insisted, that the statute of 1836 was substantially a re-enactment of the statute of 1832, and cited *Gould* v. *Hutchins*, 1 *Fairf.* 145, and *Morrison* v. *Witham*, *ibid.* 421.

This statute includes every company within the State, and gives to the selectmen of some town, the right to define its limits. The companies of infantry, except independent companies raised at large, are wholly within the limits of some one town.

The selectmen are by the statute made sole judges of the propriety of any alteration in the limits of companies, and their doings are made conclusive by it.

The limits of regiments must in all cases conform to the lines of the several towns composing such regiments. The supplies to be furnished by the towns, to " the commanding officers of each company within their respective towns," and other provisions of a similar kind, all indicate, that a company must be wholly within some town. If any company has been established, embracing a part of the territory of two towns, the establishment of such company was illegal and void.

The action was continued, for advisement, and the opinion of the Court afterwards drawn up by

SHEPLEY J. — The plaintiff in error was a member of the company of infantry under the command of Captain *Hanscomb*, which was in the town of *York*, and composed a part of the first regiment in the first brigade and first division of the Militia of this State, as organized and arranged by the Governor and Council. A part of the town of *York* had been annexed to the town of *South Berwick* by an act of the legislature, and about two thirds of the members of that company, including the plaintiff in error, were resident upon that territory ; and the selectmen of *South Berwick*, in ascertaining and defining the limits of a company existing in that town, under the command of Captain *Wentworth*, annexed all the territory, which had composed part of Captain *Hanscomb's* company to Captain *Wentworth's*, which belongs to the second regiment of the same brigade. The defendant in error is the clerk of *Wentworth's* company, and this judgment is for the penalty alleged to have been incurred by the plaintiff, by neglecting to perform military duty, in the company under the command of *Wentworth*.

The plaintiff still belongs to the company under the command of *Hanscomb*, unless transferred or annexed to *Wentworth's* by the doings of the selectmen of *South Berwick*.

By the sixth section of the act of *March* 8, 1834, *c.* 121, the Governor, with the advice of the Council, is authorized " to organize and arrange the Militia of this State conformably to the laws of the *United States,* and to make such alterations therein, as from time to time he may deem necessary."

By similar language in a former act, this Court decided, that the Governor and Council had power " to establish new companies and define their limits, to divide old ones, and to abolish or consolidate those already formed." 1 *Fairf.* 151, *Gould* v. *Hutchins.*

The ninth section of the act of *March* 9, 1832, *c.* 45, required the selectmen of towns " to define the limits of every company of infantry within their respective towns." This section was repealed by the act of 28th *February,* 1833, and the doings of the select-men under it were " declared void and of no effect." It was decided, in *Gould* v. *Hutchins,* that the selectmen had power under the ninth section," before it was repealed, " to extend or curtail the limits of a company," but that it gave them no authority " to establish new ones, or to abolish old ones."

The first section of the act of 1836, *c.* 209, declares, that the selectmen " shall ascertain and define the limits of every company of infantry in their respective towns, conforming as nearly as may be to such lines as have usually been considered the limits of such companies." It is quite obvious, that the language of this enactment was carefully chosen and designed to give a power more restricted, than that conferred by the act of 1832. By this act it is made their duty, to ascertain the pre-existing limits of the company, if practicable ; and having done this, to define, or describe them, conforming as nearly as may be to such lines as have been usually considered the limits.

The object appears to have been, not to change or alter the limits of companies, or to authorize the officers of towns to do it, but to retain them so far as they could be ascertained ; and if not ascertained with certainty, then to conform as nearly as might be to what had been usually considered the limits. It might happen, that since the original lines were established, new dwellings had been erected where none existed before, or that former dwellings had been removed to new sites ; and it might not be possible to ascertain whether the bounds of the company would include places then

without improvement or inhabitant. In these and other cases of difficulty in ascertaining the boundaries, it seems to have been the design of the legislature, to empower the officers of the towns to define the limits in such a manner, as to make them certain. But it does not appear to have been the intention to authorize the transfer of a single residence, well known to be within the limits of one company, to another company. By so doing, the town officers would not conform as nearly as may be to the usual limits. Nor is it necessary, that they should make such transfer, to effect all the objects designed to be accomplished by the act, that of having the usual limits of the companies defined by record, and so defined as to include all the inhabitants of the town, as then bounded, within the limits of some company.

If the selectmen may alter the limits at their discretion, and may annex two thirds of one company to another, surely the remaining third may be annexed to a different one, on the ground, that it is too small of itself to constitute a company ; and thus they will be found possessed of a power to abolish a company ; a power not designed to be given to them, but to be left with the Governor and Council. And this power, it was decided in the case of *Gould* v. *Hutchins*, was not conferred upon the selectmen by the unlimited language of the act of 1832.

The argument for the defendant in error objects, that by such a construction there may be cases, where, as in the present, the limits of the company cannot be established by the officers of towns, when it was intended, that the limits of all companies of infantry should be so established. And the act is apparently based upon the supposition, that power would thereby be conferred, sufficient for all such purposes. But if upon a new state of facts arising, it is found to be unequal to accomplish this, it is not for the Court by construction to extend it to such cases, when by doing so, it would necessarily destroy limitations, so clearly expressed, as to leave no doubt that they were designed ; and would enable the town officers thereby to do, what it was most manifestly designed, they should not do. This may be one of those cases in which, by an unexpected state of things, acts of legislation are found inadequate to accomplish the whole objects expected of them ;

but it is for the legislative, not the judicial department, to supply such defects as they arise.

No such defect, however, will probably be found to exist in this case, if the Governor and Council exercise the powers conferred upon them.

The argument for the defendant further objects, that the laws regulating the militia are framed upon the position, that each company of infantry is wholly within the limits of some one town, and that if the selectmen cannot, when towns are divided, or parts taken from one and annexed to another, so arrange the limits of the companies as to conform to them, certain privileges designed for them cannot be enjoyed, and certain duties imposed upon towns cannot be performed. And such seems to have been the impression of the Judge in delivering the opinion in the case of *Gould* v. *Hutchins*, where he says, " their authority extended only to companies of infantry, which it is understood are in every case territorial companies within each town, or corresponding with the limits of the town." Whether this is the fact in all cases, or whether it would be practicable to have it so in the new and sparsely settled towns and plantations, no information is afforded. Nor is there any positive enactment requiring, that it should be so. The power is given to the Governor and Council without limitation, and they may or may not have so arranged the companies of infantry. The difficulty supposed is not without a remedy ; for although the selectmen cannot arrange the companies anew, conforming them to the altered boundaries of towns, the Governor and Council may do so. The ninth section of the act which confers the power upon the town officers declares, that nothing in the act shall be construed so as to affect the powers and duties of the Governor and Council, as granted in the former act. And in that act the power is given " to make such alterations therein as from time to time he may deem necessary." And it rather seems to be proper, that such power should be exclusively vested in the Governor and Council ; for if important changes, as in the present case, are made in the number of soldiers composing companies or regiments, it should be known to the Commander-in-Chief, that he may understand, whether they are so organized as to be most effective, and if they are not, that he may cause the necessary alterations to be made. If such alterations can

take place without his knowledge, he may be uninformed of the disarranged and inefficient condition of a part of the militia. Some corps would be found to have many officers and few soldiers, and others more soldiers and a less proportion of officers, than was designed.

If it becomes necessary in consequence of the alteration of town lines, to alter the organization of the militia, there is an evident propriety in having it done by the Commander-in-Chief, that the due proportions of officers and men in the several corps may be preserved, which can never be accomplished by the officers of towns, whose interference may be attended with detriment, and probably would be with inconvenience, to the militia.

*Judgment reversed.*